BEFORE THE
UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re: GERMAN AUTOMOTIVE ANTITRUST LITIGATION | MDL No. ___ |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407**

I.   BACKGROUND

This litigation consists of four Actions (two in the Northern District of California and two in the District of New Jersey) alleging substantially similar claims arising out of the same alleged facts: Defendants—including Audi, BMW, Daimler, Porsche, and Volkswagen (together, the "Manufacturer Defendants")—engaged in cartel activity in violation of U.S. and state antitrust laws when they met hundreds of times to exchange competitively sensitive information.[1] This long-running scheme inflated prices that U.S. consumers paid for automobiles manufactured by German automobile manufacturers from 1996 to 2017.[2] Pursuant to 28 U.S.C. § 1407, Plaintiffs Steven Lewis and Travis Burton (collectively, "Plaintiffs") respectfully move the Judicial Panel

---

[1]   The "Manufacturer Defendants" are Volkswagen AG, Volkswagen Group of America ("Volkswagen" or the "Volkswagen Defendants" or the "VW Defendants"); Audi AG, Audi of America, Inc., and Audi of America, LLC ("Audi" or the "Audi Defendants"); Dr. Ing. H.c.F. Porsche AG and Porsche Cars North America ("Porsche" or the "Porsche Defendants); Daimler AG, Mercedes Benz USA, Mercedes-Benz U.S. International, Inc., Mercedes-Benz Vans LLC ("Daimler" or the "Daimler Defendants"); Bayerische Motoren Werke AG and BMW of North America KKC ("BMW" or the "BMW Defendants"). The "Bosch Defendants" are Robert Bosch LLC and Robert Bosch GmbH. The "Defendants" are the Manufacturer Defendants and the Bosch Defendants.

[2]   There are active investigations concerning the revelations that Defendants participated in cartel activity by the European Commission and the German Federal Cartel Office.

1

on Multidistrict Litigation (the "JPML" or "Panel") to centralize the four Actions set forth in the accompanying Schedule of Actions (the "Related Actions") in the Northern District of California before the Honorable District Court Judge Charles Breyer, as well as any tag-along actions or other cases that may be filed asserting related or similar claims. All four Actions follow the revelations—first published on July 22, 2017 by the German magazine *Der Spiegel*—that the Defendants participated in hundreds of secret meetings and exchanged competitively sensitive information concerning the key aspects of the Manufacturer Defendants' design and manufacture of automobiles. One important aspect of the meetings related to technology that led to the creation of the "defeat device" that was the subject matter of the litigation in *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation*, Case No. 3:15-md-02672 (referred to herein as "Dieselgate"). Dieselgate was consolidated in the Northern District of California before the Honorable Charles R. Breyer, who has been assigned to the first-filed Action in the Northern District of California. The bulk of the claims in Dieselgate have been resolved.

Two of the Actions, including the first-filed Action, are pending in the District of New Jersey. On July 25, Plaintiffs Elizabeth Kaufman, Edna Parker, and Carroll Gibbs filed a class action complaint in the District of New Jersey asserting claims against the Manufacturer Defendants and Bentley Motors Limited for violating Section 1 of the Sherman Act, state antitrust laws, and other state consumer protection laws. *See Kaufman et al. v. BMW AG, et al.*, Case No. 2:17-cv-5440-ES-MAH (D.N.J., filed July 25, 2017) (the "*Kaufman* Action"). The *Kaufman* Action has been assigned to the Honorable Esther Salas. On July 28, Plaintiff Juan Barrera filed a class action complaint in the District of New Jersey asserting claims against the Manufacturer Defendants for violating Section 1 of the Sherman Act, state antitrust laws, and

other state consumer protection laws. *See Barrera v. BMW North America, LLC, et al.*, Case No. 2:17-cv-5550 (D.N.J., filed July 28, 2017) (the "*Barrera* Action").

Two of the Actions are pending in the Northern District of California, where California regulators enforce the emissions standards that the Defendants sought to circumvent. On July 28, 2017, just three days after the first-filed Action, Plaintiffs filed a robust class action complaint in the Northern District of California asserting claims against the Manufacturer Defendants, Robert Bosch GmbH, and Robert Bosch LLC for violating Section 1 of the Sherman Act as well as California and Oregon state antitrust and unfair competition laws. *See Lewis et al. v. BMW AG et al.*, Case No. 3:17-cv-4314 (N.D. Cal., filed July 28, 2017) (the "*Lewis* Action"). That Action has been assigned to Judge Breyer. That same day, Plaintiff Gabriel Briscoe filed a class action complaint in the Northern District asserting claims against the Manufacturer Defendants for violating Section 1 of the Sherman Act, Racketeer Influenced and Corrupt Organizations Act ("RICO"), and California state antitrust and unfair competition laws. *See Briscoe v. BMW AG et al.*, Case No. 3:17-cv-4320 (N.D. Cal., filed July 28, 2017) (the "*Briscoe* Action"). That Action was assigned to the Honorable Magistrate Judge Kandis A. Westmore in the Oakland Division of the Northern District.

All of the Actions allege that the Manufacturer Defendants engaged in extensive cartel activity starting in the 1990s and continuing until recently; all Actions assert claims under federal and state antitrust laws that pertain to cartel activity; and all Actions follow the publication of revelations in *Der Spiegel*.[3]

## II. THE ACTIONS SHOULD BE CENTRALIZED

The Panel should transfer and consolidate the Related Actions in a single district because: (1) the Actions present numerous common questions of fact and law and (2) consolidation will

---

[3] Some Complaints reflect independent investigation of counsel. *See, e.g., Lewis* Action Complaint at ¶¶ 10-11, 63.

convenience the parties and witnesses, and will promote the just and efficient conduct of this litigation.

    A.    **The Related Actions Involve Common Questions of Fact and Law**

Where, as here, actions pending in different judicial districts concern common questions of fact and law, such actions should be coordinated or consolidated in one district for pretrial proceedings under 28 U.S.C. § 1407. The Related Actions involve one or more common questions of fact and law, including:

- Whether the Defendants and their co-conspirators engaged in a scheme to artificially inflate the price of German automobiles sold in the United States, both diesel and non-diesel;
- The identity of the participants of the alleged conspiracy and their roles in implementing the scheme;
- The duration of the alleged conspiracy and the acts carried out by cartel participants and their co-conspirators in furtherance of the conspiracy;
- Whether the alleged conspiracy violated Section 1 of the Sherman Act and state antitrust laws;
- Whether the conduct of the Defendants and their co-conspirators caused injury to the business or property of consumers in the United States;
- Whether prices of German automobiles were inflated due to the cartel activity that was recently revealed; and
- Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence.

Antitrust actions concerning allegations of cartel activity present perhaps a paradigmatic example of actions this panel has centralized and transferred under Section 1407, because factual and legal questions about a cartel's operation and effects should be resolved in an efficient manner, and with the benefit of consolidation and close judicial oversight. *See, e.g., In re: Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. MDL 1720, 2013 WL 8123000, at *1 (J.P.M.L. 2013) (transferring related antitrust cases under § 1407 because, among

other things, the cases "involved common questions of fact"); *In re: Auto. Wire Harness Sys. Antitrust Litig.*, 867 F. Supp. 2d 1349, 1350 (J.P.M.L. 2012) (centralizing related price-fixing actions that involved common questions of fact). Indeed, the Panel has been consolidating international cartel antitrust actions for over 40 years. *See In re Uranium Indus. Antitrust Litig.*, 458 F. Supp. 1223, 1228–29 (J.P.M.L. 1978) (transferring international uranium cartel actions to the Northern District of Illinois).

In this case, it is immaterial that some Plaintiffs have filed federal RICO claims and that some Plaintiffs have alleged broader class sizes. Nor is it important for these purposes that some Plaintiffs are pursuing claims against Bosch Defendants, who supplied automotive parts to the Manufacturer Defendants, including the software that created the notorious "defeat device" in diesel engines. What matters is that all of the claims relate to the same set of material facts—that the Manufacturer Defendants exchanged competitively sensitive information for at least twenty years concerning the design and technology in their automobiles, as well as key information about their suppliers, and engaged in secret agreements to control both the technology and their suppliers. *See In re Bank of N.Y. Mellon Corp. Foreign Exch. Transactions Litig.*, 857 F. Supp. 2d 1371, 1372-73 (J.P.M.L. 2012) ("Where common factual issues exist, however, the presence of different legal theories among the subject actions is not a bar to centralization.").

      **B.**    **Consolidation Serves the Convenience of the Parties and Witnesses and Promotes a Just and Efficient Resolution of the Actions**

Centralization under 28 U.S.C. § 1407 is proper when it "will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." *In re: Webkinz Antitrust Litig.*, 582 F. Supp. 2d 1380, 1381 (J.P.M.L. 2008). Centralization is appropriate where, as here, it will "eliminate duplication in discovery, avoid conflicting rulings

5

and schedules, reduce litigation cost, and save time and effort of the parties, the attorneys, the witnesses, and the courts." *Manual for Complex Litigation* (Fourth), § 20.131 (2016).

Indeed, "[a]ntitrust actions present a category of actions that the Panel almost inevitably orders transferred if there are multiple actions pending in different districts." David F. Herr, *Multidistrict Litigation Manual*, § 5:14 (2016). Like so many prior antitrust class actions that this Panel has centralized, the Related Actions "share factual questions" and "[c]entralization under Section 1407 will eliminate duplicative discovery; prevent inconsistent pretrial rulings, especially with respect to class certification; and conserve the resources of the parties, their counsel and the judiciary." *In re: Transpacific Passenger Air Transp. Antitrust Litig.*, 536 F. Supp. 2d 1366, 1367 (J.P.M.L. 2008).

In centralizing complex litigation, the Panel has also frequently has noted the importance of avoiding inconsistent class certification rulings. *See, e.g.*, *In re: Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*, 26 F. Supp. 3d 1394, 1395 (J.P.M.L. 2014) ("Centralization will . . . prevent inconsistent pretrial rulings (particularly as to class certification) . . . ."); *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) ("We have consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determination exists.").

Ultimately, consolidation brings the benefit of having the Actions "before a single judge who can structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that common parties and witnesses are not subjected to discovery demands that duplicate activity that will or has occurred in other actions." *In re Dep't of Veterans Affairs Data Theft Litig.*, 461 F. Supp. 2d 1367, 1368-69 (J.P.M.L. 2006). If additional actions are filed against the Defendants (which is not unlikely for such competition cases, particularly as competitors and other direct purchasers might wish to pursue claims), tag-along actions could be transferred to the transferee court, avoiding the inconvenience and inefficiency of litigating similar cases in different districts. *See* J.P.M.L. R. 7.1 & 7.2 (regarding tag-along actions). The

Related Actions remain in the earliest stages of litigation, and early coordination at this point will allow the court and parties to reap the substantial benefits of coordination or consolidation with minimal transaction costs. This is the ideal case in which to consolidate or at least coordinate the Related Actions.

### III. THE PANEL SHOULD CENTRALIZE THE ACTIONS IN THE NORTHERN DISTRICT OF CALIFORNIA

The Northern District of California is the most appropriate transferee district in which to centralize the Related Actions, and Judge Breyer, who is currently presiding over the Dieselgate litigation, is well suited to accept the coordinated or consolidated proceedings and efficiently manage this litigation.

#### A. Judge Breyer Has Extensive Experience in One Facet of the Conspiracy

The Honorable Charles Breyer is particularly well suited to oversee this litigation, given his efficient and effective handling of the case *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, Case No. 3:15-md-02672-CRB. Judge Breyer's leadership in that action led to a resolution of that complex action almost within a year of the revelation of the scandal. While the legal claims of this Action vary in some distinctive ways from the consumer claims in Dieselgate action, some factual predicates are similar, and the case is similarly complex from an international and regulatory perspective. Like Dieselgate, this case also calls for strong judicial oversight and attention to the complex interplay between private and governmental litigants. If Judge Breyer has time to attend to this Action, the litigants would be well served by his guidance.

#### B. Both Key Witnesses and Plaintiffs Reside in the Northern District

Important witnesses, such as the California Air Resources Board ("CARB") are located in or near the Northern District in California through its Bay Area Air Quality Management District branch. *Briscoe* Complaint at ¶ 26. One feature of the cartel was to develop technology that would deceive CARB, which promulgated emissions standards that were more stringent than those in the European Union and the United States more generally. *Lewis* Action Complaint ¶

7

60. Defendants staged events in or near the Northern District to promote "clean" technology and market diesel cars to California consumers. *Id.* ¶¶ 87-88, 90. California has a powerful interest in enforcing its environmental standards, as the Panel recently held in *In re: Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices and Products Liability Litigation*, No. 3:17-md-02777-EMC (J.P.M.L. Apr. 5, 2017), Doc. No. 1 at 3. All the Manufacturer Defendants have tested their vehicles in California to ensure compliance with those standards, and have met regularly with CARB and EPA regulators within the state.

Putative class members reside across the country, but at least two named Plaintiffs reside in or around the Northern District of California. *See Lewis* Action (Plaintiff Lewis resides in Fairfield, CA); *Briscoe* Action (Plaintiff Briscoe resides in Oakland, CA). Additionally, counsel in both the *Lewis* and *Briscoe* Actions have offices in the Northern District, as does counsel in the *Kaufman* Action.[4]

      **C.**      **The Northern District of California is Well Suited to Manage this Litigation**

In selecting the appropriate transferee district, the Panel weighs the experience and ability of the forum in managing complex multidistrict litigation. The Northern District of California has both.

            1.      The Northern District has Significant and Substantial Experience in Complex and Multidistrict Litigation

The panel of jurists in the Northern District of California have had extensive experience with complex antitrust and consumer actions such as these, ranging from the antitrust actions in the electronic components cartels—*see In re: Capacitors Antitrust Litigation* (N.D. Cal. No. 3:14-cv-03264); *In re: Lithium-Ion Batteries Antitrust Litigation* (N.D. Cal. No. 4:13-md-02420); *In re: Static Random Access Memory Antitrust Litigation* (N.D. Cal. No. M:07-cv-01819); *In re: TFT-LCD (Flat Panel) Antitrust Litigation* (N.D. Cal. No. 3:07-md-01827); *In re:*

---

[4]    *See Robins Kaplan LLP*, http://www.robinskaplan.com/firm/offices/silicon-valley (last visited July 31, 2017).

*Dynamic Random Access Memory Antitrust Litigation* (N.D. Cal. No. 4:02-md-01486)—as well as many other complex civil cases subject to the MDL process.

The Northern District of California has substantial experience in conducting numerous centralized class actions. The Panel's own prior actions reflect this fact; currently, there are 21 multidistrict actions pending in the Northern District of California.[5]

### 2. The Northern District Provides an Accessible Metropolitan Venue in which to Host this Multidistrict Litigation

The Panel also considers which district is the most convenient for the parties and witnesses when deciding where to transfer a multidistrict litigation. *See* 28 U.S.C. § 1407(a) (transfers shall be made by the Panel based upon its determination that such transfers "will be for the convenience of parties and witnesses"). The Northern District of California is a convenient venue for all, located in an area with an abundance of hotels, taxis, rental cars, as well as other necessary litigation resources. It also has three international airports located in San Francisco, San Jose, and Oakland, providing convenient flights for all attorneys hailing from both the east and west coasts. The Panel has recognized this factor before in centralizing cases in the Northern District of California. *In re Compression Labs, Inc., Patent Litig.*, 360 F. Supp. 2d 1367, 1368-69 (J.P.M.L. 2005) (finding the Northern District an appropriate forum because it is "an easily accessible, metropolitan district that is well equipped with the resources that this complex docket is likely to require").

### 3. The Northern District is Likely to Provide a Faster Resolution of this Litigation

Judicial caseload statistics also favor the Northern District of California over the District of New Jersey, with the median time to trial 24.3 months in the Northern District of California and 39 months in the District of New Jersey. *See* http://www.uscourts.gov/sites/default/files/data_tables/fjcs_c5_0331.2016.pdf. The Northern

---

[5] http://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-July-17-2017.pdf

9

District of California thus has a median time to trial that is 38% faster than the District of New Jersey.

    4.    <u>Other Considerations Favor Centralization in the Northern District of California</u>

All of the jurists in the Northern District of California are well respected and have the experience to be able to effectively manage and coordinate the proceedings in this litigation.

In the event that Judge Breyer's other commitments make him unable to accept responsibility for all of the actions that will be filed related to the cartel allegations at issue here, the Northern District has a deep bench.  Thirteen other judges are currently presiding over MDL actions.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Panel centralize the Actions set forth in the Schedule of Actions filed herewith, as well as any tag-along actions or other cases, such as may be subsequently filed in federal court asserting related or similar claims, in the United Stated District Court for the Northern District of California.

Dated:  July 31, 2017

Respectfully submitted,

BLEICHMAR FONTI & AULD LLP
By */s/ Lesley E. Weaver*_____
Lesley E. Weaver

Lesley E. Weaver (SBN 191305)
Matthew S. Weiler (SBN 236052)
Emily C. Aldridge (SBN 299236)
BLEICHMAR FONTI & AULD LLP
1999 Harrison Street, Suite 670
Tel:  (415) 445-4003
E-mail:lweaver@bfalaw.com
E-mail:mweiler@bfalaw.com
E-mail:ealdridge@bfalaw.com

*Counsel for Steven Lewis and Travis Burton*